**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

RANDY MITCHELL COPENHAVER,

   Plaintiff,

vs.

BRIAN GARDNER, MICHAEL J.
CARR, ROBERT BRAKSIEK,

   Defendants.

No. C11-0046-LRR

ORDER

---

## I.  INTRODUCTION

  The matter before the court is the plaintiff's complaint (docket no. 5), which was filed by the clerk's office on June 30, 2011. In his complaint, the plaintiff stated:

> Brian Gardner allowed Michael J. Carr [who] allowed Dr. Robert J. Braksiek to disregard [and deny] me medical treatment from 2-13-2010 till present 4-11-11 for bilateral uncinate spurs, broad-based disc bulges, mild to moderate bilateral foraminal stenosis, degenerative disc disease, chronic back pain, herniated discs, severe carpal tunnel syndrome, deviated septum and chronic elbow pain. For all my pain, I've received ibuprofen 2 x a day for 14 months. I have filled out inmate request forms, grievances, contacted citizen's aid/ombudsman to no avail. I've been denied. They told [the] ombudsman they are getting me help since I've contacted them, and they didn't. Since then, I told them I was filing a 1983 civil [action] and on 3-11-2011, over 13 months later, I was given an MRI, and, to this date 4-11-2011, nothing has changed. I've been forced to sit on steel and concrete for 15½ [hours] a day every day from 7:00 a.m. to 10:30 p.m. My exam diagnosis: increased pain. I am in pain all the time with no relief or a [mattress] to sit on.

In light of such complaint and the parties' subsequent filings, the court deems it appropriate to determine whether dismissal is appropriate or whether it is appropriate to set this matter for trial.

## II.  APPLICABLE STANDARD

There are disadvantages associated with the grant of in forma pauperis status under 28 U.S.C. § 1915.  Namely, the court is required to dismiss at any time a plaintiff's action if it is frivolous or malicious or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (specifying grounds that authorize dismissal); *see also Moore v. Sims*, 200 F.3d 1170, 1171 (8th Cir. 2000) (setting forth standard under 28 U.S.C. § 1915(e)(2)(B)(ii)).  It is well-established that a prisoner's meritless case must be dismissed in an effort to preserve scarce judicial resources and to deter baseless, frivolous and malicious claims.  *See Christiansen v. Clarke*, 147 F.3d 655, 658 (8th Cir. 1998) (emphasizing that, by allowing district courts to dismiss all meritless suits at any time and without giving leave to amend, 28 U.S.C. § 1915 reduces the burdens on the judicial system and increases the cost to prisoners who elect to pursue such suits).

A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Thus, the court is required to dismiss claims that fail "'to raise a right to relief above the speculative level. . . .'", *see Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atl.*, 550 U.S. at 555), or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.  *See, e.g., Denton v. Hernandez*, 504 U.S. at 27 (considering frivolousness); *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (concluding that a district court may dismiss an action if an affirmative defense exists).

2

## III.  RELEVANT BACKGROUND

After the plaintiff submitted his complaint, the court entered several orders.  In those orders, the court addressed several issues and repeatedly determined that the record did not justify the appointment of counsel.  Ultimately, as ordered by the court, the defendants filed an answer (docket no. 15) on December 20, 2011.[1]  In their answer, the defendants denied the plaintiff's assertion that he had not litigated the same facts in another court, and they declared that the Iowa District Court for Linn County decided the plaintiff's claims against him.   They also asserted several affirmative defenses.

On March 12, 2012, the plaintiff filed a notice (docket no. 20).  Pursuant to such notice, the plaintiff advised the court that, although he tried to obtain a job, he did not have the means to make payments on an installment basis.  He also attached to such filing, an authorization to release his medical information, responses to the defendants' request for production of documents and his responses to the defendants' request for admission, presumably pursuant to Federal Rule of Civil Procedure 36.  With regard to the request for admission, the plaintiff answered multiple questions.   Specifically, the plaintiff admitted the following: (1) on March 4, 2011, he filed a motion for proper medical care in the Iowa District Court for Linn County; (2) on March 23, 2011, Judge Sean W. McPartland conducted a hearing with respect to the motion for proper medical care; (3) on April 4, 2011, Judge McPartland ruled on the motion for proper medical care; (4) he neither requested medical care from Brian Gardner nor discussed medical care with Brian Gardner; (5) he sustained an elbow injury as a result of slipping and falling on snow prior to his placement in the Linn County Correctional Center; (6) his elbow injury is not an emergency or a life-threatening condition; (7) in 2004 and while serving time in a federal

---

[1] The court notes that neither the plaintiff in his complaint nor the defendants in their answer demanded a jury trial.  Under Federal Rule of Civil Procedure 38(b), a party must demand a jury trial in writing "no later than 14 days after the last pleading directed to the issue is served".  And, under Federal Rule of Civil Procedure 38(d), "[a] party waives a jury trial unless its demand is properly served and filed."

prison, medical personnel diagnosed him as having herniated disks; and (8) he suffered a deviated septum as a result of a fight that occurred eight or nine years ago. But, the plaintiff indicated that he asked his criminal defense attorney to appeal Judge McPartland's ruling and denied that he knew the outcome of his motion for proper medical care prior to April 12, 2011, that is, the date that he signed his complaint. He also disputed the defendants' assertions that: (1) he did not ask Michael Carr for medical care or discuss his medical care with him, (2) Robert Braksiek is an independent contractor and is not an employee of or supervised by either Brian Gardner or Michael Carr, (3) he is overweight by 120 pounds and (4) his herniated disks, deviated septum and carpal tunnel do not present an emergency or a life-threatening condition.

After the plaintiff filed his notice, the court entered a scheduling order. The parties essentially ignored all of the deadlines that the court established. Nevertheless, on October 2, 2012, the court permitted the parties to submit a written narrative, a list of exhibits and a list of the names and addresses of all of the witnesses that they intended to call (docket no. 25). On October 15, 2012, the plaintiff filed his narrative, a list of exhibits and a list of witnesses (docket no. 29). On October 24, 2012, the defendants filed their narrative, a list of exhibits and a list of witnesses (docket no. 30).

Concerning the plaintiff's October 15, 2012 filing, the plaintiff offers, among other things, the following: (1) statements, (2) kites and grievances, (3) letters to and from Citizens' Aide/Ombudsman, (4) the March 4, 2011 motion for proper medical care and the April 4, 2011 ruling, (5) medical reports, (6) letters from the Iowa Board of Medicine, (7) an inmate incident report and notice of violation, (8) correspondence that pertains to efforts undertaken by his criminal defense attorney to obtain medical information from Mercy Hospital and the University of Iowa Hospitals and Clinics, (9) a letter regarding the cost for copying medical records from the Linn County Correctional Center, (10) bills for medical services performed by Mercy Hospital, Linn County Emergency Medicine, Radiology Consultants of Iowa and the University of Iowa Hospitals and Clinics and (11)

the request for admission, request for production of documents and propounded interrogatories. He also indicated that he wanted to call as witnesses his criminal defense attorney, two deputies and the doctors that tested him for carpel tunnel in 2006 and 2011 and that, although he does not have them, he would like to rely on his medical records from the Linn County Correctional Center, the University of Iowa Hospitals and Clinics, the Iowa Medical and Classification Center, the Anamosa State Penitentiary and Mercy Hospital located in Cedar Rapids.

Given the plaintiff's filings on March 12, 2012 and October 15, 2012, the facts are as follows:

> In January of 2005, the plaintiff was arrested. At that time, the plaintiff had herniated discs in his back and, as a result, pain. From January 21, 2005 to the time that he went to federal prison almost a year later, medical provided him a bottom bunk with a mattress to ease his pain. While in federal prison, the plaintiff received an MRI that confirmed he had herniated discs on his left and right sides. In 2006, the plaintiff went to the University of Iowa Hospitals and Clinics to remove a tumor and to be tested for carpel tunnel. After performing tests, doctors determined that the plaintiff had carpel tunnel and provided him with braces for both of his hands. The plaintiff has been instructed to wear those braces while he sleeps.

> On February 12, 2010, the plaintiff was arrested again. Medical confirmed that it had his medical file from federal prison and placed him in a 4-E Dorm. He informed medical that, just before his arrest, he had slipped and fallen on his right elbow and that he needed medical attention. At that time, he was 6 feet and 3 ½ inches tall and weighed either 328 pounds or 329 pounds. The plaintiff told medical that, when he fell, it felt like someone hit him on the elbow with a hammer. Also, in February of 2010, he told Dr. Braksiek that he had injured his elbow, had a bad back, had a deviated septum, had anxiety disorder and had carpel tunnel. When he saw Dr. Braksiek, the plaintiff informed Dr. Braksiek that his back was okay because he had been placed in a 4-E Dorm but

he needed to be seen with respect to his elbow, needed braces for his hands to deal with his carpel tunnel and needed some nasal decongestant and breathe right strips for his deviated septum. Dr. Braksiek asked the plaintiff if he had someone who could purchase breathe right strips and bring them to him unopened, and the plaintiff told Dr. Braksiek that he did not have anybody. Dr. Braksiek then informed the plaintiff that medical does not provide breathe right strips and also informed him that braces for his hands are not permitted in general population and room did not exist in medical isolation.

On March 2, 2010 or 18 days after he told medical that he needed medical attention with respect to his elbow, the plaintiff saw Dr. Braksiek. Subsequently, the plaintiff was taken to Mercy Hospital, x-rays were taken and doctors examined his elbow to determine whether it was broken. The doctor informed him that he did not have any broken bones, but he could have a torn or ripped ligament, muscle, tendon or nerve. After seeing medical personnel, the plaintiff believed that he had just bruised his elbow. However, after sixty days, the plaintiff still had problems and experienced some pain. At some point, the plaintiff saw a psychiatric doctor who addressed his anxiety disorder and prescribed 1 mg. Xanax, which he has been on for over twenty years.

In response to the medical treatment that he received in February and March of 2010, the plaintiff submitted over an eight month period more than 50 kites just for his elbow alone and other kites for his back, anxiety disorder, carpal tunnel and deviated septum. Because he believed that the kites were being ignored or disregarded, the plaintiff started to submit grievances on October 10, 2010. He submitted multiple grievances, which were denied after an investigation or inquiry, and, for the most part, he decided to stop submitting them after April 26, 2011.

The grievances that the plaintiff submitted are dated October 10, 2010, November 17, 2010, December 29, 2010, January 12, 2011, January 15, 2011, March 23, 2011, April 2, 2011 (two), April 10, 2011, April 21, 2011, April 25, 2011, April 26, 2011 and June 3, 2011. They generally request medical treatment regarding his elbow, 24 hour access

to a mattress for his bad back, responses to his grievances, clean sheets that do not have stains and that cover his mattress, an additional MRI to assess his herniated discs, access to a bunk at all times, the termination or reprimand of a nurse for failing to wear gloves when she dispensed his medication between January 13, 2011 and January 14, 2011 and over-medicated him, proper preparation and timely administration of his medication, special wash to prevent allergic reactions and placement in general population rather than segregation. They also indicate that, after he complained about his elbow, he went to the University of Iowa Hospitals and Clinics on at least two occasions, that he received different or new mattresses after he complained, that he received a mattress and a bottom bunk after serving 50 days for fighting on March 2, 2011, that he refused his medication from March 26, 2011 to March 29, 2011 because the nurse refused to wear gloves, that he believes the nurses are not telling the truth, that he stopped receiving Xanax prior to March 2, 2011 or the date he got mad, cussed and screamed at a deputy and that he was placed in segregation on April 27, 2011 because he was a danger to others and posed an immediate threat to the safety and security of the institution.

The official responses to the plaintiff's grievances indicate that a doctor never ordered that he be provided a mattress for 24 hours per day, nurses were consulted and addressed his medical needs, grievances had been previously addressed, blood stained sheets could be exchanged but the size of the sheets did not provide a valid basis to exchange them, he received the proper dose of medication, nurses do wear gloves if they physically touch medication, nurses are permitted to prepare medication outside the presence of an inmate, he received a special wash for a trial period and it is no longer needed and he would not be moved within the Linn County Correctional Center.

Apart from submitting grievances, the plaintiff wrote to Citizens' Aide/Ombudsman for help on April 22, 2010 and October 28, 2010.   On behalf of the plaintiff, Citizens' Aide/Ombudsman contacted medical within the Linn County Correctional Center.   The January 10, 2011 correspondence

that the plaintiff received from Citizens' Aide/Ombudsman indicates that medical reported that the plaintiff had been seen on November 23, 2010 for his elbow and a number of other times for his other medical ailments, but the plaintiff states that he only received pain medication for his elbow.

He also states that, in 2011, he went to the University of Iowa Hospitals and Clinics for a consultation regarding his elbow and they did an EEG.  In addition, he states that he went again and tests were done for his carpel tunnel.  Further, the plaintiff maintains that a doctor, who also suffers from back pain, told him that it could be beneficial for him to lay on his bunk or on the floor without his mattress and that he did not need it 24 hours per day.  He also complains that officials alleged that he was "cheeking" medications on January 12, 2011 and he received notice of violating the rules on March 7, 2011.

The plaintiff's medical reports indicate that medical personnel from Mercy Medical Center, the University of Iowa Hospitals and Clinics, Linn County Emergency Medicine, Radiology Consultants of Iowa or the Linn County Correctional Center Health Department saw the plaintiff on March 2, 2010, March 11, 2010, August 13, 2010, October 23, 2010, November 9, 2010, November 23, 2010, January 10, 2011, April 26, 2011, March 3, 2011, and March 11, 2011.  Pursuant to his medical visits, it is clear that the plaintiff had his elbow, scalp and penis examined, he had a little pustule treated, he chatted about chronic nasal congestion, he had X-rays taken, he had an MRI done with respect to his increased back pain, he visited with neurology and he had other medical concerns addressed.  They also indicate that the plaintiff strongly and disrespectfully disagrees with Dr. Braksiek's observations about what he complained about, Dr. Braksiek's statements as to what he could do and Dr. Braksiek's medical findings.

Not satisfied with his medical treatment or the response that he received from Citizens' Aide/Ombudsman, the plaintiff, through criminal defense counsel, filed a motion for proper medical care on March 4, 2011.  Shortly after filing such motion or on March 11, 2011, the plaintiff received an

MRI. The Iowa District Court for Linn County ultimately denied the plaintiff's motion for proper medical care. So, the plaintiff then filed this action under 42 U.S.C. § 1983. The plaintiff also wrote again to Citizens' Aide/Ombudsman on June 8, 2011 and submitted a complaint to the Iowa Board of Medicine prior to June 28, 2011. The Iowa Board of Medicine voted to take no action and to close the matter on August 12, 2011.

Finally, the plaintiff acknowledges that he is 100 pounds over weight, that he is currently receiving Tylenol or Ibuprofen three times per day, which is up from two times per day, and that, despite his ailing and painful back, elbow and hands, he "got into a fight [and] beat the shit out of [another inmate]." The plaintiff also states that, in July of 2011, he received hand braces for his mild to severe carpel tunnel and that, after being convicted, interns or doctors saw him from September 23, 2011 to October 23, 2011. The plaintiff is now located at the Anamosa State Penitentiary, where he has requested treatment for his back, nose, elbow and hands.

## IV.  ANALYSIS[2]

### A.  Claims Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

---

[2] The court notes that the plaintiff never sought to amend his original pleading. Consequently, the court deems it appropriate to only address the contentions that the plaintiff included in his complaint. Namely, the allegations that the defendants did not respond to his requests regarding his back, nose, elbow and hands. Stated differently, the court will not address claims that are not included in the complaint or claims that arose after April 14, 2011.

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

### B. Medical Treatment under the Constitution

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Accordingly, the treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 831-32, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). In its prohibition of cruel and unusual punishments, the Eighth

Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326-27, 115 L. Ed. 2d 271 (1991); *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (existing medical needs) with *Helling*, 509 U.S. at 33-34, 113 S. Ct. at 2480-81 (risk of future harm to health)).

An Eighth Amendment violation occurs only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-04); *see also Wilson*, 501 U.S. at 298.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see, e.g., Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious

11

medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of the deliberate indifference standard requires a showing of verifiable medical evidence that a defendant ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of medical condition present in the case. *See Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997), and *Beyerbach*, 49 F.3d at 1326); *see also O'Neil v. White*, 221 F.3d 1343, 1343 (8th Cir. 2000) (citing *Crowley*, 109 F.3d at 502).

To meet the second requirement, the "subjective" component of an Eighth Amendment claim, a prison or jail official must have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-303; *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-303; *Estelle*, 429 U.S. at 106. Regarding the meaning of the term "deliberate indifference," the United States Supreme Court has explained:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 U.S. at 837. Thus, to establish the second requirement, "deliberate indifference," a plaintiff must assert facts showing the defendant actually knew of and disregarded a substantial risk of serious harm to his or her health or safety. *Id.*, 511 U.S. at 840-47; *Helling*, 509 U.S. at 32.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Foulks v. Cole County*, 991 F.2d 454, 456-57 (8th Cir. 1993). Negligent acts by prison officials, however, are not actionable under 42 U.S.C. section 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-34, 106 S. Ct. 662, 666, 88 L. Ed. 2d 662 (1986); *Estelle*, 429 U.S. at 106; *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992). Further, an inmate's disagreement or displeasure with his course of medical treatment is not actionable under 42 U.S.C. § 1983. *Dulany*, 132 F.3d at 1239-44; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

### C. Plaintiff's Claims

Based on the facts, the court concludes that entering judgment in favor of the defendants is proper because no Eighth Amendment medical needs violation occurred. The facts do not establish that the plaintiff had a serious medical need and the defendants actually knew of and deliberately disregarded his serious medical need. Rather, the facts, at most, indicate that Dr. Braksiek appropriately responded to the plaintiff's incessant complaints and did not authorize every procedure or test imaginable in light of the nature of the plaintiff's ailments and history. It is undisputed that Dr. Braksiek treated the plaintiff when he complained or requested treatment. The plaintiff's disagreement with the treatment that he received or insistence that more should have been done because he believes his ailments are serious does not give rise to a valid action. The record is absolutely devoid of any verifiable evidence that indicates the defendants knew of and disregarded a serious medical need that the plaintiff presented to them. It also lacks any evidence that indicates the timing of his medical treatment harmed him in any way or affected his prognosis.

13

Moreover, there is absolutely no reason to depart from the thorough findings and conclusions that the Iowa District Court for Linn County made on April 4, 2011. Those findings, based in part on the plaintiff's medical records and on extensive testimony from Dr. Braksiek and the plaintiff, include but are not limited to the following:

> [T]he undisputed evidence at the time of hearing established that [the plaintiff] has some medical conditions which have required some medical care; that the recent MRI of [the plaintiff] has confirmed objectively that [the plaintiff] has some degenerative disk disease and some bulging in certain disks; that, since he has been incarcerated, [the plaintiff] has been provided medical attention and treatment related to such conditions; and that, in the opinion of Dr. Braksiek, additional diagnosis and possible treatment of [the plaintiff's] disk problem will be required in the future, and that future evaluation of [the plaintiff] at the University of Iowa Hospitals and Clinics is planned. [. . .]B]ased upon the circumstances here, [the plaintiff] has not met his burden of establishing that his treatment has been in violation of his [constitutional] rights. [. . .] The fact that [the plaintiff may disagree with the extent of the medical treatment he has received to this point does not rise to the level of "deliberate indifference" [. . .].
>
> More specifically, with respect to [the plaintiff's] claimed elbow problem, [the plaintiff] has not established a need for more treatment than has been provided. The MRI study of the elbow showed no abnormalities and a negative study. [. . .] Likewise, with respect to [the plaintiff's] complaints related to his deviated septum, [the plaintiff] has failed to meet his burden of establishing a violation of his [constitutional] rights. [The plaintiff] concedes that the deviated septum is a condition which he experienced as a result of an altercation before being incarcerated. Although [the plaintiff] had indicated he believed he should be provided nasal decongestant for such condition, Dr. Braksiek testified such treatment would not be medically advised and could be counterproductive to [the plaintiff's] health. To the extent that [the plaintiff] believes he may be able to benefit in breathing from "breathe right strips", [the plaintiff] has not

14

produced evidence suggesting they must be provided to him as a matter of his [constitutional] rights. Likewise, [the plaintiff] produced insufficient evidence to suggest that the State has acted in violation of his [constitutional] rights with respect to any carpel tunnel problem. With respect to [the plaintiff's] anxiety disorder, [the plaintiff's] own testimony, and the testimony of Dr. Braksiek, suggests that the State had been providing Xanax to [the plaintiff] but ceased doing so because of fears that [the plaintiff] was not taking the medication but was sharing it with other inmates. With respect to [the plaintiff's] disk and "pinched nerve"[ ] issues, [the plaintiff] acknowledged he has been receiving anti-inflammatory medications (Ibuprofen) and antacid medication for acid reflux resulting from [his] use of Ibuprofen. [Additionally, the record indicates that] MRI studies also have been performed and that additional diagnostic measures are planned.

[In sum, it must be concluded that the plaintiff] has been provided with the "minimal civilized measure of life's necessities" and is not entitled under the [Constitution] to Xanax, the sleeping [mattress], elbow treatment or the "breathe right strips". [. . .] Further, no evidence was presented by [the plaintiff] to support a conclusion that the Linn County Correctional Center or any individual employees were "deliberately indifferent" to his alleged needs. [. . .] Dr. Braksiek testified that he believes all of the medical care which has been provided to [the plaintiff] while an inmate at the Linn County Correctional Center has been appropriate and that [the plaintiff] has received all the care warranted by his conditions. [The plaintiff] has failed to present medical testimony to support his argument that any such additional accommodations are required by the [Constitution].

Because the facts presented by the plaintiff do not establish a deprivation of a sufficiently serious medical need and belie any assertion of deliberate indifference by the defendants, the plaintiff fails to state a claim on which relief may be granted. *Cf. Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing case as frivolous because "[n]either differences of opinion nor medical malpractice state an actionable Constitutional

violation"); *Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) ("[T]he law requires that [the] plaintiff make a showing of subjective awareness by the prison officials of a "substantial risk" of "serious harm" . . . in order to establish [a viable] cause of action."). For failure to state a 42 U.S.C. § 1983 claim with an arguable basis in fact or in law, the plaintiff's deliberate indifference to serious medical needs claims shall be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Denton*, 504 U.S. at 26-27; *Neitzke*, 490 U.S. at 325-27; *Cokeley*, 27 F.3d at 332; *see also* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under [. . . 42 U.S.C. § 1983 . . . ] by a prisoner confined in any jail, prison, or other correctional facility if the court is satsified that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.").

Additionally, with respect to Michael Carr and Brian Gardner, dismissal is warranted because the plaintiff does not offer any facts that show they were personally involved with or had direct responsibility for his medical treatment. *See Gully v. Maynard*, 218 Fed. Appx. 551, 552 (8th Cir. 2007) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)). Indeed, apart from failing to show that either Michael Carr or Brian Gardner personally participated in or directed a violation of his constitutional rights, the plaintiff failed to establish that they had actual knowledge of a constitutional violation and acquiesced in its continuance. And, it is clear that respondeat superior is not a proper basis for liability under 42 U.S.C. § 1983. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). For failure to state a 42 U.S.C. § 1983 claim with an arguable basis in fact or in law, the plaintiff's claims against Michael Carr and Brian Gardner shall be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Denton*, 504 U.S. at 26-27; *Neitzke*, 490 U.S. at 325-27; *Cokeley*, 27 F.3d at 332; *see also* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under [. . . 42 U.S.C. § 1983 . . . ] by a prisoner confined

in any jail, prison, or other correctional facility if the court is satsified that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.").

In sum, the plaintiff's action against the defendants shall be dismissed as frivolous or for failing to state a claim upon which relief can be granted. Because the court deems it appropriate to dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the dismissal of this action shall count against the plaintiff for purposes of the three-dismissal rule set forth in 28 U.S.C. § 1915(g).

### D. Remaining Counter-Claim

The parties' litigation of this case is not condoned by the court. In June of 2011, the court made the plaintiff aware that 42 U.S.C. § 1997e(a) required him to fully exhaust his administrative remedies prior to commencing an action. Despite being aware of the law, the plaintiff elected to pursue claims that he did not fully exhaust. Further, in December of 2011, the court noted that counsel would not be appointed in light of the record, which indicated that the plaintiff acknowledged he had received medical treatment. Consequently, it observed that it was highly unlikely that the plaintiff asserted a meritorious claim because the Eighth Amendment does not allow an inmate to dictate his medical care and an inmate's displeasure with his course of medical treatment is not actionable. Also, the defendants' December 20, 2011 answer indicated that the Iowa District Court for Linn County had already ruled against the plaintiff with respect to whether the medical care that he had received violated his constitutional rights, that the plaintiff had only exhausted some of his claims and that several affirmative defenses prevented the plaintiff from obtaining any relief. Further, as of March 12, 2012, the plaintiff had admitted several facts that supported the defenses raised by the defendants. Despite the record, the parties completely disregarded the deadlines that the court established in its April 24, 2012 scheduling order. Consequently, additional discovery did not occur, and the parties never filed dispositive motions. Although the parties did

not comply with the scheduling order, the court permitted the parties to file untimely narrative statements. Those narrative statements clearly indicate that this matter could have been resolved sooner had the defendants taken proper action. They also reveal that it would not serve the interests of justice to hold a trial in this matter because it is obvious that the plaintiff cannot prevail in light of the facts that he asserts. Although reluctant to reward the defendants for essentially doing nothing to advance their positions, the court decided the case on the existing record because devoting limited judicial resources to a meritless action is not prudent. In light of the defendants' inattention to this case and decision to disregard federal judicial procedure, their counter-claim to recover reasonable attorney fees and costs of their defense is dismissed.

**IT IS THEREFORE ORDERED**:

(1) The plaintiff's 42 U.S.C. § 1983 action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

(2) The dismissal of the instant action counts against the plaintiff for purposes of the three-dismissal rule set forth in 28 U.S.C. § 1915(g).

(3) The defendant's counter-claim is dismissed.

(4) The clerk's office is directed to enter judgment in favor of the defendants as to the plaintiff's claims and judgment in favor of the plaintiff as to the defendants' counter-claim.

**DATED** this 21st day of November, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

18